# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

                -vs-                            DECISION & ORDER

CHRISTOPHER WHEELER,                      11-CV-6169-CJS
OTCSTOCKEXCHANGE.COM and NORTH
COAST ADVISORS, INC.,

                Defendants.

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Preethi Krishnamurthy, Esq. |
| | George S. Canellos, Esq. |
| | Christopher Michael Castano, Esq. |
| | U.S. Securities & Exchange Commission |
| | 3 World Financial Center |
| | New York, NY 10281 |
| | (212) 336-0116 |
| For Defendant Christopher Wheeler: | Steven E. Cole, Esq. |
| | Paul L. Leclair, Esq. |
| | Leclair Korona Giordano Cole LLP |
| | 150 State Street Suite 300 |
| | Rochester, NY 14614 |
| | (585) 327-4100 |

## INTRODUCTION

**Siragusa, J.** In a civil complaint filed on January 14, 2011, the Securities and Exchange Commission ("SEC") alleges that Defendants engaged in a "pump-and-dump scheme" (Compl. ¶ 1) by fraudulently promoting and selling penny stocks on his website, OTCStockExchange.com ("website") in a manner that violated section 17(a) and (b) of the

Securities Act of 1933, section 10(b) of the Exchange Act of 1934, and Rule 10b-5. The SEC seeks injunctive relief against Defendants as well as disgorgement of "ill-gotten gains…." (Compl. ¶ 6.) Though brought originally in the Southern District of New York, the matter was transferred to this District by the Honorable George B. Daniels, District Judge, in an Order filed on March 13, 2011. Now pending before the Court is Defendant Christopher Wheeler's ("Wheeler") application seeking an extension of time for Defendants to file an answer, and for a stay of the proceedings[1] in this action. (Doc. No. 22.) For the reasons stated below, Wheeler's motion for an extension is granted, but his motion for a stay is denied.

## FACTUAL BACKGROUND

The Court takes the facts from the SEC's complaint and the affidavits submitted on the motion. In June 2010, Wheeler retained counsel after learning he was the target of a federal criminal investigation focused on the same conduct alleged in the SEC's action in this case. (Tallon Decl. ¶¶ 2–3; Cole Decl. ¶¶ 3, 5.) On June 9, 2010, the United States Attorney for the Western District of New York commenced a civil forfeiture action[2] against Wheeler's real and personal property and that matter is still pending before the undersigned. *United States v. The Premises and Real Property Located at 6715 Golf View Rise, Victor, New York and 829 East Lake Road, Penn Yan, New York*, No. 10-CV-6308-CJS (W.D.N.Y. Jun. 9, 2010). Wheeler's answer in that case is due on March 26, 2012. In the forfeiture action, the United States Attorney for the Western District of New York alleges that since 2007, Wheeler,

---

[1] Neither OTCStockExchange.com nor North Coast Advisors, Inc., has appeared in this action. The SEC advises in their memorandum of law that it will seek default judgments against them at a later date. (SEC Mem. of Law, 3 n.4.)

[2] There is no application to stay the civil forfeiture action, only the SEC's action in this case, No. 11-CV-6169.

> has fraudulently promoted and sold stocks in exchange for free shares of that same stock, without notifying investors of this conflict of interest. Wheeler often utilized his website, www.otcstockexchange.com. to advertise and promote stocks in direct violation of federal law and SEC regulations. Wheeler devised a scheme to commit wire fraud by fraudulently promoting stocks over the internet, and as part of that scheme, committed violations of Title 18, United States Code, Section 1343 (wire fraud), and Title 18, United States Code, Section 1957 (money laundering). Furthermore, Wire Fraud, in violation of Title 18, United States Code, Section 1343 is a 'Specified Unlawful Activity', as that term is defined in Title 18, United States Code, Sections 1956 (c) (7) and 1961 (1) .

(Cole Decl. Ex. A.)

The government's investigation into Wheeler's activities began in June 2007 and lasted until September 2008. (Tallon Decl. ¶ 9.) No criminal charges have been brought to date (*Id.* ¶ 10), but Wheeler's counsel in the civil forfeiture action, Michael J. Tallon, Esq. ("Tallon") states in his declaration that,

> in the course of my experience and practice representing clients in the Western District of New York, I am unaware of a matter where the Office of the United Attorney has commenced civil forfeiture proceedings with a criminal tax and money laundering criminal underpinning that did not result in a criminal prosecution. Thus, it is my opinion that criminal charges will be brought against Mr. Wheeler unless a disposition involving the criminal and civil proceedings is reached.

(Tallon Decl. ¶ 10.) Tallon expresses his concern that if a stay in this case is not granted, Wheeler will "need [to] choose between waiving or to invoking his Fifth Amendment privilege before the criminal investigation is complete, thereby risking severe prejudice in connection with defending himself in both matters." (*Id*. ¶ 13.) Both Tallon and Wheeler's counsel for this civil action, Steven Cole, Esq. ("Cole"), assert that allowing the SEC to obtain discovery in this case will likely allow it "to obtain evidence and discovery beyond the limits of Federal Rule of Criminal Procedure 16(b) and therefore prejudice Mr. Wheeler's defense in any

criminal action." (*Id*.; Cole Decl. ¶ 3.) Cole further argues that, "there is no compelling reason to move forward with this action now which outweighs the serious prejudice to Mr. Wheeler, especially where the S.E.C. waited years to even file this case." (Cole Decl. ¶ 3.) Cole disputes that delaying this SEC action would prejudice the public:

> In addition, a stay of this action as to Mr. Wheeler will not present any risk to the investing public. While Mr. Wheeler disputes that the website at issue in this case ever caused harm to the investing public, I am informed that Mr. Wheeler is not presently associated with the website.

(Cole Decl. ¶ 14.)

## STANDARDS OF LAW

In *Kashi v. Gratsos*, 790 F.2d 1050 (2d Cir. 1986), the Second Circuit addressed the issue of granting a stay in a civil action when a criminal prosecution is pending. There, the district court had granted the stay sought by the criminal and civil defendant. The panel in *Kashi* quoted from a District of Columbia Circuit case to note that, "the Constitution … does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.... Nevertheless, a court may decide in its discretion to stay civil proceedings ... 'when the interests of justice seem ... to require such action....'" *Kashi*, 790 F.2d at 1057 (quoting *SEC v. Dresser Industries*, 628 F.2d 1368, 1372 (D.C. Cir. 1980) (*en banc*), *cert. den. sub nom Dresser Industries, Inc. v. SEC*, 449 U.S. 993 (1980) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970) (citations omitted)). "Pre-indictment requests for a stay of civil proceedings are generally denied." *U.S. Commodity Futures Trading Com'n v. A.S. Templeton Group, Inc.*, 297 F. Supp. 2d 531, 534 (E.D.N.Y. 2003). Although the Second Circuit has not directly addressed the issue, as the Southern District observed in *United States v. District Council of New York City*, 782 F. Supp. 920, 926 (S.D.N.Y. 1992), the

weight of authority supports the proposition that district courts will rarely grant a pre-indictment stay:

> The Second Circuit has rejected the proposition that a witness under indictment is automatically excused from civil proceedings. [*United States v.*] *Simon*, 373 F.2d [649] at 653 [(2d Cir. 1967)].[3] In the absence of undue prejudice or constitutional deprivation district courts have not imposed stays even where criminal indictments are pending against a defendant in a parallel civil suit. *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980); *see Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1496–1500 (S.D.N.Y. 1987) (civil defendant facing sentencing in criminal proceeding). In the case of pre-indictment requests for a stay, courts in this district "will deny a stay of the civil proceeding where no indictment has issued." *In re Par Pharmaceutical, Inc. Securities Litigation*, 133 F.R.D. 12, 14 (S.D.N.Y. 1990); *see S.E.C. v. Gilbert*, 79 F.R.D. 683, 686 (S.D.N.Y. 1978) and *United States v. Sloan*, 388 F. Supp. 1062, 1064 (S.D.N.Y. 1975); *see also Waldbaum v. Worldvision Enterprises, Inc.*, 84 F.R.D. 95, 96 (S.D.N.Y. 1979) (civil plaintiff not entitled to stay); *but see United States v. Certain Real Property*, 751 F. Supp. 1060, 1063 (E.D.N.Y. 1989) and *Brock v. Tolkow*, 109 F.R.D. 116, 120–21 (E.D.N.Y.1985).

In *In re 650 Fifth Avenue*, No. 1:08-cv-10934-RJH, 2011 WL 3586169 (S.D.N.Y. Aug. 12, 2011), the Honorable Richard J. Holwell reviewed the case law regarding pre-indictment stays, the Hobson's choice faced by a litigant (either to testify in the civil action, or to invoke his Fifth Amendment privilege), and the constitutionality of forcing a litigant to make that choice. He then observed:

> In fact, "[t]he dilemma recurs with sufficient regularity that a consensus has developed on the principles to be applied by district judges in determining motions to stay civil actions while criminal litigation is conducted." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 575. Under those principles, courts in this

---

[3] The Supreme Court granted the parties' joint motion to vacate and in a *per curiam* opinion held, "the judgments of the lower courts are vacated and the case is remanded to the United States District Court for the Southern District of New York with instructions to dismiss the case as moot." *Simon v. Wharton*, 389 U.S. 425 (1967).

> Circuit assessing requests to stay civil proceedings consider "1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1139. Nevertheless, "[a] stay of the civil case ... is an extraordinary remedy." *Id*.

*Id*. at 2011 WL 3586169, 3.

## ANALYSIS

Analyzing the factors set out above, the Court determines that the application for a stay should be denied. "The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." *Volmar Distributors, Inc. v. New York Post Co., Inc*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

In the case before the Court, the government evidently has known about the alleged fraudulent practices for almost four years, yet has not indicted any defendant in the subject case. The existence of the civil forfeiture proceeding with its allegations of criminal conduct support an argument that the government *could* seek an indictment, but, that it has not done so for almost four years is indicative of the speculative nature of assuming a criminal prosecution will happen. It is also possible that any criminal prosecution contemplated by the United States Attorney could be resolved without indictment. (*See* Tallon Decl. ¶ 3 ("The effort to resolve the matter remains a possibility and I understood that the OUSA would further investigate the matter, and, thereafter, would discuss a possible disposition.").) Since Wheeler has not been indicted, he is in a weaker position to argue for a stay of this civil action.

Wheeler relies on *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985), to argue that this first factor weighs heavily in his favor and that it is "critical, especially where both actions are brought by the government." (Wheeler Reply Mem. of Law, 4.) In *Brock*, the court wrote that, "[a] stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter…and is even more appropriate when both actions are brought by the government." *Brock*, 109 F.R.D. at 119. In that case, however, the court specifically found that, "[h]ere a stay of discovery would cause no serious damage to the public interest." *Id*. at 120.

Considering the interests of the SEC in proceeding expeditiously versus the prejudice to the SEC caused by a delay should a stay be granted, and considering the private interests of and burden on Wheeler, the Court find that the SEC's interests outweigh Wheeler's. Fraudulent stock sales undermine the public's confidence in the financial markets. The SEC's objective is to prevent fraudulent stock sales. *See* The Investor's Advocate: How the SEC Protects Investors, Maintains Market Integrity, and Facilitates Capital Formation *available at* http://sec.gov/about/ whatwedo.shtml (last checked September 27, 2011) ("the SEC is concerned primarily with promoting the disclosure of important market-related information, maintaining fair dealing, and protecting against fraud."). As the District of Columbia Circuit pointed out in *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) (*en banc*):

> Unlike the IRS, which can postpone collection of taxes for the duration of parallel criminal proceedings without seriously injuring the public, the SEC must often act quickly, lest the false or incomplete statements of corporations mislead investors and infect the markets. Thus the Commission must be able to investigate possible securities infractions and undertake civil enforcement actions even after Justice has begun a criminal investigation. For the SEC to stay its hand might well defeat its purpose.

*Id*. at 1380. Though Wheeler's website, the vehicle through which the allegedly fraudulent information was distributed, is not a corporation, it is an equally public source of investment information. Although counsel avers that Wheeler no longer has an interest in the defendant website, that question remains and can only be resolved if discovery is allowed in this case.

Wheeler also disputes the urgency of the SEC's need to proceed, since it waited for years before bringing the instant action. The SEC's papers do not address this issue, but during oral argument, the SEC's counsel proffered the existence of a May 2010 email showing that although Wheeler had sold the website to Mark McKelvey (phonetic), he would continue as a consultant. Further, the SEC's counsel stated that the seized assets come nowhere near the disgorgement amount sought by the SEC in this action. Accordingly, the SEC argues that it needs discovery to determine, *inter alia*, Wheeler's involvement in the website, the extent to which the website may still be disseminating false information, and to locate Wheeler's assets.

Wheeler cites to *United States v. $557,933.09*, No. 95-CV-3978 (JG), 1998 WL 817651 (E.D.N.Y. Mar. 2, 1998), in which the district court granted a stay of a forfeiture action. (Wheeler Mem. of Law, 5.) In that case, the court determined that,

> Requiring Mercado either to answer the questions posed to him by the government or to decline to do so and lose the seized property would "'undermine [his] Fifth Amendment privilege against self incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case."'

*Id*., 1998 WL 817651, 4 (quoting *United States v. Certain Real Property*, 751 F. Supp. 1060 (E.D.N.Y. 1989) (quoting *SEC v. Dresser Industries*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) (*en banc*), *cert. den. sub nom Dresser Industries, Inc. v. SEC*, 449 U.S. 993 (1980))). Unlike

a forfeiture action, in which the assets could be secured, absent an injunction, the purported fraudulent representations here will continue to induce members of the public to purchase stock without full knowledge of the information allegedly possessed by Defendants.

Finally, the Court determines that the interests of the courts and the public interest weigh in favor of denying the application for a stay. The Court has an interest in the prompt disposition of civil cases. *See* 28 U.S.C. § 471 (1991) (establishing a requirement for the courts to implement a plan "to facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes."). Moreover, as discussed above, the public interest in stopping allegedly fraudulent stock sales is great, as is the public interest in disgorgement of allegedly wrongfully obtained profits. This factor weighs heavily against granting a stay.

## CONCLUSION

For the reasons stated above, the Court determines that the facts in this case overlap the facts in the criminal investigation, that no defendant in this civil action has been indicted, that the interests of the SEC in proceeding expeditiously outweigh the prejudice to the SEC that would be caused by a delay, that the interest of the courts is in a speedy resolution of this civil matter and that the interests of the public weigh heavily against issuing a stay. Accordingly, it is hereby

ORDERED, that Wheeler's application to stay this action pending any criminal prosecution is denied without prejudice; and it is further

ORDERED, that Wheeler's unopposed application to extend the deadline for filing an answer is granted. Defendants' answer is due by **October 14, 2011**.

IT IS SO ORDERED.

Dated: October 7, 2011
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge