# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                              Plaintiff,

vs.

CHRISTOPHER WHEELER and
OTCSTOCKEXCHANGE.COM,

                              Defendants,

            and

NORTH COAST ADVISORS, LLC,

                        Relief Defendant

DECISION AND ORDER

11-CV-6169-CJS-JWF

---

## APPEARANCES

For Plaintiff:               Preethi Krishnamurthy, Esq.
                              Christopher M. Castano, Esq.
                              U.S. Securities & Exchange Commission
                              New York Regional Office
                              Brookfield Place
                              200 Vesey Street, Suite 400
                              New York, NY 10281

For Defendants:            Steven E. Cole, Esq.
                              Paul L. Leclair, Esq.
                              Leclair Korona Giordano Cole LLP
                              150 State Street Suite 300
                              Rochester, NY 14614

## INTRODUCTION

**Siragusa, J.** Pending before the Court is a motion for monetary relief against defendant Christopher Wheeler ("Wheeler") and a motion for default judgment as to North Coast Advisors, LLC ("North Coast") and OTCStockExchange.Com (the "Website"). Pls.' Mot. Monetary Relief, Dec. 3, 2013, ECF No. 58 [hereinafter "Motion I"]; Pls.' Mot. Default J., Dec. 3, 2013, ECF No. 61 [hereinafter "Motion II"]. These motions were filed

by the Securities and Exchange Commission ("SEC") pursuant to a judgment signed by this Court against Wheeler on April 17, 2012. J. as to Christopher Wheeler, Apr. 17, 2012, ECF No. 45 (hereinafter "Judgment I"). Wheeler consented to entry of the judgment without admitting or denying the allegations of the Complaint[1] (except as to jurisdiction) and waived findings of fact and conclusions of law, as well as any right to appeal the judgment. *Id.* ¶ 1. In addition to permanent injunctions described in Parts I–IV of Judgment I,[2] Part V granted the Commission an opportunity to bring these motions for disgorgement and/or civil penalties related to the proceeds of Defendant's statutory violations. *Id.* at §§ I–V. Plaintiff's applications are hereby granted in part.

## BACKGROUND

The Court relies on the facts as they are stated in the complaint and affidavits. As indicated in the previous judgment for this case, "solely for the purposes of such motion [for disgorgement and/or civil penalties], the allegations of the Complaint shall be accepted as and deemed true by the Court." *Id.* at 4, § V.

The complaint alleges that during the "Relevant Period," at various times between 2007 and 2008, Wheeler orchestrated a fraudulent "pump and dump" scheme through the Website involving four thinly-traded penny stocks: Infinity Medical Group, Inc. ("Infinity"), Solei Systems, Inc. ("Solei"), Cannon Exploration Inc. ("Cannon"), and China Jiangsu Golden Horse Steel Ball Inc. ("China Jiangsu") (collectively, the "Issuers"). Am. Compl. ¶¶ 1–4, 8, Feb. 3, 2011, ECF No. 9. Utilizing the Website, of which he

---

[1] The SEC filed an original complaint on January 14, 2011, ECF No. 1, which it amended on February 4, 2011, ECF No. 9. References to the complaint in this Decision and Order are to the amended complaint.

[2] Parts I through IV involved Wheeler's violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, Sections 17(a)–(b) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a)–(b), and any further participation in offerings of penny stocks).

was the sole employee and operator, Wheeler recommended that investors purchase the Issuers' stocks by posting lofty price targets and failing to disclose that he had received millions of shares of those stocks while selling them for his personal benefit. *Id.* at ¶¶ 10, 16–23. For instance, Wheeler recommended one stock as a "buy" with a "long term price target" of $18.00 per share, a 1,500% increase over the stock's then-quoted price of approximately $1.20 per share. *Id.* at ¶ 31. Wheeler's promotion of the Issuers' stocks had the effects of temporarily raising their quoted prices, after which Wheeler sold the stocks at a substantial profit. *Id.* at ¶¶ 19–20.

Wheeler's sales of the Issuers' stocks produced profits totaling $3,012,747.56. Baier Decl. ¶¶ 3-11, Exs. 1A, 1B, 2–4, Dec. 3, 2013, ECF No. 60; Castano Decl. Exs. 7–9, Dec. 3, 2013, ECF No. 64. More specifically, Wheeler sold Infinity shares from July 11 to December 17, 2007, for a total of $1,093,002.05, and from May 27 to September 29, 2008 for a total of $203,568.15, collectively totaling $1,296,570.20. Baier Decl. 5–8, Exs. 1A and 1B; Castano Decl. Exs. 7–9. He sold Solei shares from June 2 to July 10, 2008 for a total of $307,609.96. Baier Decl. ¶ 9, Ex. 2; Castano Decl. Exs. 7–8. He sold Cannon shares from May 7 to September 29, 2008 for a total of $1,356,134.46. Baier Decl. 10 and Ex. 3; Castano Decl. Exs. 7–8. Finally, Wheeler sold China Jiangsu shares on June 12 and 13, 2008, for a total of $52,432.94. Baier Decl. 11 and Ex.4; Castano Decl. Exs. 7–8. Additionally, $390,000 in proceeds from the fraudulent scheme were transferred to North Coast, an incorporated entity wholly-owned by Wheeler and otherwise unrelated to the fraudulent activities. Am. Compl. ¶ 3; Pls.' Mem. Mot. Default J. 17, ECF No. 62 [hereinafter "Memo II," to coincide with Motion II].

The SEC filed its Amended Complaint against the defendants on February 4, 2011 in the United States District Court for the Southern District of New York. On March 18, 2011, the Honorable George B. Daniels entered an Order transferring the case to this district. Order Den. Mot. Dismiss, Mar. 18, 2011, ECF No. 19.

On April 1, 2011, Wheeler moved to stay the case pending the conclusion of a criminal investigation by the United States Attorney's Office for the Western District of New York. Def.'s Mot. Stay, Apr. 1, 2011, ECF No. 22. On October 7, 2011, the Court denied that motion. Order Den. Mot. Stay, Oct. 7, 2011, ECF No. 35. On October 28, 2011, Wheeler filed his Answer, asserting his Fifth Amendment privilege against self-incrimination in response to each substantive allegation. Answer, Oct. 28, 2011, ECF No. 37. Wheeler continued to assert his Fifth Amendment privilege throughout the course of this case. Meanwhile, the Website and North Coast failed to respond to the allegations stated in the Amended Complaint.

On April 19, 2012, the Court entered a Judgment regarding Wheeler reflecting the parties' partial settlement on injunctive relief and a penny stock bar, but not regarding monetary relief. Judgment 1, §§ I–V. In that Judgment, this Court stated:

> In connection with the Commission's motion for disgorgement and/or civil penalties . . . (a) Defendant [Wheeler] will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

*Id.* at § V.

On November 20, 2013, the Clerk entered a default against Website and North Coast[3] for failure to appear or otherwise defend the allegations in the Amended Complaint. Entry of Default, Nov. 20, 2013, ECF No. 57.

On December 3, 2013, the SEC filed a "Motion for Monetary Relief Against Defendant Christopher Wheeler" and a "Motion for Default Judgment as to North Coast Advisors, LLC and OTCStockExchange.com," along with accompanying memoranda in support. Motion I, ECF No. 58; Motion II, ECF No. 61;  Pls.' Mem. Mot. Monetary Relief, ECF No. 59 (hereinafter "Memo I"); Memo II, ECF No. 62. Those motions sought joint and several liability for Wheeler and Website regarding disgorgement totaling $3,012,747.56 and prejudgment interest totaling $681,808.51, as well as maximum civil penalties for each; injunctive relief against the Website; and disgorgement with prejudgment interest against North Coast totaling $468,830.18. *See id.* In seeking monetary relief, the Commission relied on the declarations of Elizabeth Baier and Christopher M. Castano in support of the calculated damages sought. Baier Decls., Dec. 3, 2013, ECF Nos. 60, 63; Castano Decls., Dec. 3, 2013, ECF Nos. 64, 65.

On January 9, 2014, Wheeler filed his response in opposition to the motion against him for monetary relief. Def.'s Resp., Jan. 9, 2014, ECF No. 69. Neither North Coast nor Website has filed a response to the pending motions. The SEC filed its Reply on January 16, 2014. Pls.' Reply, Jan. 16, 2014, ECF No. 70.

---

[3] *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (to effect full relief in recovering assets that are the result of the underlying fraud, SEC could name a non-party depository as a nominal or relief defendant).

**ANALYSIS**

*A. Defendant Christopher Wheeler*

I.    *Disgorgement*

Through utilization of the Bluesheet Management System—an electronic pro-gram used by the SEC to obtain trading data from various broker-dealers in the security industry, staff accountant Baier of the SEC reviewed over 56,000 trades during the Rel-evant Period. Baier Decl. ¶¶ 6–10, Mar. 9, 2011, ECF No. 16. Upon such review, the SEC determined Wheeler accumulated ill-gotten gains to the sum of $3,012,747.56. Memo I 5–7, ECF No. 59. The opposing party has not brought forth any reasonable ba-sis to doubt the validity of this determination.

Wheeler has asserted his Fifth Amendment privilege throughout this case and now, upon this motion for monetary relief, may only pose defenses on the basis of evi-dence established during discovery. Wheeler claims in his response to the pending mo-tion that some of the evidence proffered by the SEC is inadmissible hearsay. However, he did not articulate the basis for his claim. Evidence previously provided with the Amended Complaint and accompanying memoranda sufficiently substantiates the SEC's monetary calculations in accordance with Section V of the partial settlement judgment from April 17, 2012. Judgment I § V, ECF No. 45. The Amended Complaint states Wheeler profited "at least $2.95 million" from his acts and that figure is not signifi-cantly different from the $3,012,747.56 disgorgement the SEC requests. Am. Compl. ¶ 3, ECF No. 9. Furthermore, "disgorgement need only be a reasonable approximation of profits causally connected to the violation." *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995) (citation omitted). As long as the disgorgement calculation is reasonable, "any

risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* at 140 (citation omitted).

Although some of Wheeler's assets have been seized in a separate civil proceeding, the Court acknowledged in its previous order denying a motion to stay, that "the seized assets come nowhere near the disgorgement amount sought by the SEC in this action." Order Den. Mot. Stay 8, ECF No. 35. Wheeler also argues against disgorgement at this time because a criminal indictment could still be sought. Def.'s Resp. 2, ECF No. 69. The Court addressed this issue previously and determined the fact that an indictment had not been sought "for almost four years is indicative of the speculative nature of assuming a criminal prosecution will happen." Order Den. Mot. Stay 2, ECF No. 35. Accordingly, the Court finds that the SEC's disgorgement request is merited, given the accepted conclusion that Wheeler is liable for the fraudulent securities scheme.   With regard to Wheeler's request to subtract the costs of operation from the disgorgement amount, it is well established that defendants in a disgorgement action are "not entitled to deduct costs associated with committing their illegal acts." *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 375 (2d Cir. 2011) (quoting *SEC v. Cavanagh*, 2004 U.S. Dist. LEXIS 13372, at 102 (S.D.N.Y. 2004)).

Therefore, the Court holds Wheeler liable for the entire disgorgement amount as calculated by the SEC, totaling $3,012,747.56. Memo I 5–7, ECF No. 59. Wheeler is jointly and severally liable for this amount in conjunction with Website.

II.    *Prejudgment Interest*

The decision to impose prejudgment interest on a defendant is within the discretion of the trial court. Payment of prejudgment interest is necessary to ensure a defend-

ant does not benefit from "what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). Wheeler has not successfully challenged the SEC's calculations of prejudgment interest based on the interest rate used by the Internal Revenue Service for underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)—a method of interest calculation approved by the Second Circuit in *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) ("[The IRS rate] reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud."). Memo I 7–8, ECF No. 59. In determining the proper amount of prejudgment interest for these types of cases, "courts have adopted the IRS underpayment rate without controversy." *SEC v. Yun*, 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001) (collecting cases).

Following this widely accepted practice, the Court has determined Plaintiff is entitled to prejudgment interest according to the IRS underpayment rate and Wheeler is hereby ordered to pay prejudgment interest for his violations, totaling $681,808.51.

III.   *Civil Penalty*

The Court is authorized to impose civil penalties for the subject violations in accordance with Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act. *See* 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). Civil penalties for such violations are categorized by three "tiers" that depend on the seriousness of the violations. *Id.* at (d)(2); (d)(3)(B), respectively. These penalty amounts are periodically adjusted for inflation. *See* 17 C.F.R. § 201.1003 (2010).

The SEC seeks third tier penalties against Wheeler, which require a showing that the violation "(1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and [(2)] . . . directly or indirectly resulted in substantial losses . . . to other persons." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). Maximum third tier penalties for a natural person liable of violations such as Wheeler's are the greater of $130,000 per violation or the gross amount of the pecuniary gain to that person resulting from the violations. *See id.*

On the basis of the undisputed allegations in the Amended Complaint, the Court has determined a third tier penalty is appropriate for Wheeler's violations. Wheeler acted purposely and intentionally in perpetuating a securities scheme that defrauded hapless investors out of millions of dollars. *See* Am. Compl., ECF No. 9; *See also SEC v. Aimsi Techs.*, 650 F. Supp. 2d 296, 307 (S.D.N.Y. 2009) (court imposed third tier penalties because the defendants engaged in a fraudulent "pump and dump" scheme). Courts have used various methods for counting the number of violations pursuant to a third tier penalty, including "counting each unlawful trade as a separate violation, each falsified or fraudulent document as a violation, and each investment a defendant received from defrauded investors as a violation." Memo I 9–10, ECF No. 59 (citations ommitted). Counting violations by any of these methods and then multiplying the number of violations by $130,000 per violation would, as the SEC notes, far exceed the gross amount of Wheeler's pecuniary gain. *Id.*

Ultimately, the amount of the penalty "shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); *See also SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005). In this instance, the Court believes a civil

penalty equaling Wheeler's gross pecuniary gain is appropriate. The seriousness and pervasiveness of Wheeler's wrongdoing justifies a serious punitive response. *See SEC v. Razmilovic*, 738 F.3d 14, 39 (2d Cir. 2013). Wheeler has not demonstrated any manner in which his current or future financial condition would inhibit his ability to pay such a penalty. *See SEC v. Aragon Capital Mgmt., LLC*, 672 F. Supp. 2d 421, 447 (S.D.N.Y. 2009) Therefore, the Court hereby orders Wheeler to pay a third tier civil penalty of $3,012,747.56 for his violations of applicable securities laws.

### B. Defendant OTCStockExchange.Com

I.    *Disgorgement*

The Website was properly served in this case. Memo II 8, ECF No. 62. Under Federal Rules 12(a)(1)(A)(i) and 15(a)(3), the Website's answer was due on the later of twenty-one days after service of the Summons and Complaint or fourteen days after service of the Amended Complaint. Thus, the deadline for an answer or responsive pleadings was February 23, 2011. The Website has not filed an answer or any other responsive pleading, nor has it appeared, nor has it otherwise defended itself. Castano Decl. ¶ 6, ECF No. 65. The Clerk of Court issued an Entry of Default as to Website on November 20, 2013. Entry of Default, ECF No. 57. A defendant's default constitutes an admission of liability for the well-pleaded allegations in the complaint. *Trans World Airlines v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973). The Amended Complaint alleges Website violated the anti-touting and anti-fraud provisions of the Exchange Act. Memo II 8–10, ECF No. 62.

The SEC requests Website be held jointly and severally liable for any disgorge-ment and prejudgment interest for which Wheeler is liable. *Id.* at 12–15. On the basis of the Website's default status, the Court grants the SEC's request for disgorgement total-ing $3,012,747.56, to be held jointly and severally liable with Wheeler.

II.     *Prejudgment Interest*

Prejudgment interest for Website ill-gotten gains was calculated according to the method described in Section A.II. of this decision and order and matches the sum of prejudgment interest for which Wheeler is liable. Memo II 14–15, ECF No. 62. For the same reasons provided in that section, the Court holds Website jointly and severally lia-ble with Wheeler for payment of prejudgment interest totaling $681,808.51.

III.    *Permanent Injunction*

In its Memorandum in Support of this motion, the SEC seeks an order "perma-nently enjoining the Website from committing future violations of Sections 17(a) and 17(b) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10-5 thereun-der." Memo II 10–11, ECF No. 62. The Court has determined that an injunction against the Website would be improper under the present circumstances.

As the SEC noted in Memo II, Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act entitle the SEC to obtain permanent injunctive relief upon a showing that: (1) violations of securities laws occurred, and (2) there is a reasonable likelihood that violations will occur in the future. *See SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99–100 (2d Cir. 1978). Although the first prong is clearly satis-fied, the Court is not convinced of a reasonable likelihood that future violations will oc-cur.

There are several factors to consider with regard to issuing an injunction for future violations, including:

> The likelihood of future violations, the degree of scienter involved, the sincerity of defendant's assurances against future violations, the isolated or recurrent nature of the infraction, defendant's recognition of the wrongful nature of his conduct, and the likelihood, because of defendant's professional occupation, that future violations might occur.

*SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1048 (2d Cir. 1976).

Considering these factors, the Court places significant weight on the undisputed fact that Website has been sold and is no longer under the direct control of Wheeler, notwithstanding Wheeler's current "consultant" role with the company.[4] Furthermore, the existence of past allegations or proven violations is not, alone, sufficient to justify a permanent injunction when there is not a reasonable likelihood that violations will continue. Wheeler, in reaching a partial settlement, acknowledged the violations and is being held responsible for those acts via the aforementioned relief in Section A of this decision.

The Supreme Court has made clear that before an injunction is issued, the moving party must prove "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). The Court disagrees with Plaintiff that the Website's domain name (which has since changed) and purpose constitute a "high" likelihood that it will be used to conduct future securities fraud schemes if not enjoined. Memo II 11, ECF No. 62. A permanent injunction on the Website is not necessary to

---

[4] *See* Order Den. Mot. Stay, ECF No. 35, at 8 ("The SEC's papers do not address this issue, but during oral argument, the SEC's counsel proffered the existence of a May 2010 email showing that although Wheeler had sold the website to Mark McKelvey (phonetic), he would continue as a consultant.").

prevent future illegal acts—particularly when the SEC has not alleged that Website has violated any securities laws in the several years since Wheeler sold the Issuers' stocks. To issue a permanent injunction against a presumably law-abiding entity for hypothetical future violations amounts to a redundancy with the law. For these reasons, the Court does not grant the SEC's request for a permanent injunction against the Website.

IV.    *Civil Penalty*

For reasons similar to those stated in Section III, the Court will not issue a civil penalty against Website. It was stated in Wheeler's testimony and on several other occasions that Wheeler was, at the time of the alleged violations, the sole owner, employee, and operator of Website. Consequently, a civil penalty is being issued against Wheeler for the fraudulent scheme which was ultimately his doing. The violations involving the Issuers' stocks resulted solely from Wheeler's actions. An additional civil penalty against the Website would double the monetary punishment to Wheeler—or otherwise unduly burden the Website's new operator—and would not serve the interests of justice. Thus, no civil penalty will be imposed on Website.

## C. Relief Defendant North Coast Advisors, LLC

I.    *Disgorgement*

North Coast was properly served in this case. Memo II 8, ECF No. 62. Like Website, North Coast's answer was due on the later of twenty-one days after service of the Summons and Complaint or fourteen days after service of the Amended Complaint. For North Coast, that date was February 18, 2011. North Coast has not filed an answer or any other responsive pleading, nor has it appeared, nor has it otherwise defended itself. Castano Decl. ¶ 6, ECF No. 65. The Clerk of Court issued an Entry of Default as to North Coast on November 20, 2013. Entry of Default, ECF No. 57.

The disgorgement calculation for North Coast has been reduced from the accepted claim in the Amended Complaint of $450,000 to $390,000. Am. Compl. ¶ 3; Memo II 17, ECF No. 62. The defendants have not posed a reasonable basis to doubt the validity of this calculation and hereby orders North Coast to pay disgorgement amounting to $390,000.

II.    *Prejudgment Interest*

Prejudgment interest for North Coast's disgorgement was calculated according to the method described in Section A.II. of this judgment. *Id.* For the same reasons provided in that section, the Court orders North Coast to pay prejudgment interest totaling $78,830.18.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the SEC's motions for penalties and remedies against Defendants are granted in part and denied in part.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Wheeler is liable for $3,012,747.56 in disgorgement, $681,808.51 in prejudgment interest for ill-gotten gains accumulated through his activities, and $3,012,747.56 in civil penalties—totaling $6,707,303.63.

IT IS FURTHER ORDERED that Website is joint and severally liable for the combined $3,694,556.07 in disgorgement and prejudgment interest for which Wheeler is liable.

IT IS FURTHER ORDERED that North Coast, is liable for $390,000 in disgorgement and $78,830.18 in prejudgment interest—distinct from the aforementioned relief from Wheeler and Website—totaling $468,830.18.

IT IS SO ORDERED.

DATED:     September 27, 2014
           Rochester, New York

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge